UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.                                              Criminal No. 22-347 (DWF/ECW)

IBRAHIM GHASSAN SLEYMAN,
a/k/a "Abe Sleyman,"
a/k/a "Ibrahim Suleiman,"

Defendant.

## AFFIDAVIT OF HILLARY A. TAYLOR IN SUPPORT OF REQUEST FOR EXTRADITION

I, Hillary A. Taylor, being duly sworn, hereby depose and state:

1.     I am a citizen of the United States of America and a resident of the State of Minnesota.

2.     I received my Juris Doctor degree from the University of Virginia School of Law, in Charlottesville, Virginia. I was admitted to the Bar for the State of Minnesota in 2016. I am also admitted to practice law before the U.S. District Court for the District of Minnesota and the U.S. Court of Appeals for the Eighth Circuit.

3.     From June 2021 to the present, I have been employed in the Office of the United States Attorney for the District of Minnesota as a Special Assistant United States Attorney. From April 2019 through May 2021, I was employed by the Minnesota State Attorney General's Office as an Assistant Attorney General in the Solicitor General's Division, defending constitutional, employment, and tort claims filed against the State of Minnesota. From September 2016 through March 2019, I was employed at a private law

firm as a litigation associate. As a Special Assistant United States Attorney, I am currently assigned to the Violent and Major Crimes Division, where my duties include the investigation and prosecution of persons charged with criminal violations of the laws of the United States, including child exploitation and sex trafficking laws. I have represented the United States in cases against defendants charged with violations of federal criminal laws, and based upon my training and experience, I am experienced in the criminal laws and procedures of this District and the United States.

4.   In the course of my duties, I have become familiar with the charges and evidence in the case of United States v. IBRAHIM GHASSAN SLEYMAN ("SLEYMAN"), also known as "Abe Sleyman" and "Ibrahim Suleiman," Criminal Case No. 22-347 (DWF/ECW) (also referred to under Case Numbers 0:22-cr-00347-DFW-ECW, CR 22-347 DWF/ECW, and 22-MJ-890 (TNL)). These charges follow an investigation by the Federal Bureau of Investigation ("FBI"), Elk River Police Department in Elk River, Minnesota, and U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"), which revealed that from approximately October 28, 2020, through September 13, 2022, SLEYMAN used online mobile applications to solicit in-person sexual contact from, and exchange sexually explicit material with, four child victims ages 9, 10, 12, and 14 years old, and other child victims yet to be identified. This investigation is described in further detail below and in the attached exhibits.

## Legal and Procedural Background

5.     On October 28, 2022, a criminal complaint was filed in the United States District Court for the District of Minnesota, charging SLEYMAN with violating criminal laws of the United States related to child sexual abuse and exploitation. An arrest warrant based on the criminal complaint filed in the U.S. District Court was issued for SLEYMAN that same day. On December 7, 2022, a federal grand jury in the District of Minnesota returned an indictment against SLEYMAN, charging him with violating criminal laws of the United States related to child sexual abuse and exploitation.[1]

The Criminal Complaint

6.     Under the laws of the United States, a criminal prosecution may be commenced by the filing of a criminal complaint in a U.S. District Court. A criminal complaint is a written statement of essential facts constituting an offense charged and is

---

[1] On September 9, 2022, the State of Minnesota also filed a criminal complaint in the Tenth Judicial District Court for Sherburne County, Minnesota, charging SLEYMAN with three counts of criminal sexual conduct. The charges filed by the State of Minnesota are distinct and different from the federal charges. Moreover, even if the charges were identical, U.S. law permits such dual prosecution in both federal and state courts. Specifically, under the longstanding doctrine of dual sovereignty in the United States, separate sovereigns may prosecute an individual for the same act. In particular, the U.S. Supreme Court has explained that "an offense defined by one sovereign is necessarily a different offense from that of another sovereign," even if the offenses have identical elements. *Denezpi v. United States*, 142 S. Ct. 1838, 1844-45 (2022). Therefore, the Double Jeopardy Clause of the U.S. Constitution, which prohibits individuals from being prosecuted twice for the same offense, does not bar prosecutions by separate sovereigns. The Supreme Court has clarified that the U.S. federal government and U.S. state governments are separate sovereigns, such that "a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute," or vice versa. *Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019); *United States v. Lanza*, 260 U.S. 377, 382 (1922). Accordingly, SLEYMAN may properly be prosecuted for both federal and state charges for the same underlying conduct in the United States.

made under oath before a U.S. Magistrate Judge or, if none is reasonably available, before a state or local judicial officer. A criminal complaint must establish that probable cause exists to believe that an offense has been committed and that the defendant named in the complaint committed it. If satisfied that the complaint sets forth a sufficient factual basis to establish probable cause, the U.S. Magistrate Judge orders the issuance of a warrant of the arrest for the defendant named in the complaint.

7.      On October 28, 2022, FBI Special Agent Matthew B. Vogel presented a criminal complaint and affidavit, under Criminal Case Number 22-mj-890 (TNL), before U.S. Magistrate Judge Tony N. Leung of the District of Minnesota, formally charging SLEYMAN with criminal offenses in violation of the laws of the United States, as further detailed below. It is the practice of the U.S. District Court for the District of Minnesota to retain the original complaint and file it with the records of the court. Therefore, I have obtained a copy of the complaint from the clerk of the court and attached it to this statement as **Exhibit 1**.

The Warrant of Arrest

8.      On October 28, 2022, U.S. Magistrate Judge Tony N. Leung signed a warrant of arrest for SLEYMAN for the offenses charged in the complaint. It is the practice of the U.S. District Court for the District of Minnesota to retain the original arrest warrant and file it with the records of the court. Therefore, I have obtained a copy of the arrest warrant from the clerk of the court and attached it to this statement as **Exhibit 2**. When a warrant issued in conjunction with a criminal complaint has not been executed at the time of indictment, the practice of the U.S. District Court for the District

of Minnesota is to refrain from issuing a new arrest warrant in conjunction with the indictment. That is what occurred in this case. Accordingly, the arrest warrant attached as **Exhibit 2** remains outstanding and executable to arrest SLEYMAN for the crimes charged in the federal criminal complaint and indictment.

The Indictment

9.      Under the federal laws of the United States, a criminal prosecution may also be commenced when a grand jury returns and files an indictment with the Clerk of the U.S. District Court. Institutionally, a grand jury, though an arm of the court, is an independent body composed of private citizens—not less than 16 and not more than 23 people—whom the U.S. District Court selects at random from the residents of the judicial district in which the Court resides. The purpose of the grand jury is to review the evidence of crimes presented to it by U.S. law enforcement authorities. After independently reviewing this evidence, each member of the grand jury must determine whether there is probable cause to believe that a crime has been committed and that a particular person committed that crime. If at least 12 jurors find that the evidence they have reviewed provides probable cause to believe that a particular person committed the crime, the grand jury may return an indictment. An indictment is a formal accusation that charges the particular person, now a defendant, with a crime or crimes, identifies the specific laws that the defendant is accused of violating, and specifies the date and place where the charged crime occurred.

10.      The grand jury initiates the criminal prosecution when it files the indictment with the U.S. District Court. Thereafter, the Clerk of the Court, at the

5

direction of a U.S. District Judge or Magistrate Judge, normally issues a warrant for the defendant's arrest.

11.    In addition to imprisonment and a criminal fine, depending on the charged offenses, U.S. law provides for the seizure and forfeiture of property of the defendant that constitutes the proceeds of the offense or that facilitates such offense. A criminal forfeiture may be alleged in an indictment, and merely provides notice to the defendant of the government's intention to forfeit property associated with the offense. If specific property is listed in the forfeiture allegation, the grand jury must find probable cause to believe that the property is forfeitable. Upon a showing of probable cause, a U.S. District Court Judge or Magistrate Judge may issue a seizure warrant for the seizure of the property.

12.    On December 7, 2022, a grand jury sitting in the District of Minnesota returned a five-count indictment charging SLEYMAN with criminal offenses against the laws of the United States and filed the indictment with the U.S. District Court for the District of Minnesota. The indictment also listed forfeiture allegations related to the offenses charged. It is the practice of the U.S. District Court for the District of Minnesota to retain the original indictment and file it with the records of the court. Therefore, I have obtained a certified true and accurate copy of the indictment from the Clerk of the Court and have attached it to this affidavit as **Exhibit 3**.

## The Charges and Pertinent United States Law

13.     The federal complaint and indictment both charge SLEYMAN with committing the following offenses:

Count 1:     Attempted production and production of child pornography, in violation of Title 18, United States Code (U.S.C.), Sections (§§) 2251(a) and 2251(e). This charge carries a maximum penalty of 30 years in prison;

Count 2:     Receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). This charge carries a maximum penalty of 20 years in prison;

Count 3:     Enticement of a minor, in violation of 18 U.S.C. §§ 2422(b) and 2427. This charge carries a maximum penalty of life in prison;

Count 4:     Attempted transfer and transfer of obscene material to a minor, in violation of 18 U.S.C. § 1470. This charge carries a maximum penalty of 10 years in prison; and

Count 5:     Identity theft, in violation of 18 U.S.C. §§ 1028(a)(7) and 1028(b)(2)(B). This charge carries a maximum penalty of 20 years in prison.

14.     The United States requests the extradition of SLEYMAN for each of these offenses. Each count charges a separate offense. Each offense is punishable under a statute that (a) was the duly enacted law of the United States at the time the offense was committed, (b) was the duly enacted law of the United States at the time the complaint and indictment were filed, and (c) is currently in effect. Each offense is punishable under U.S. law by more than one year of imprisonment. I have attached to this affidavit a copy of the pertinent sections of these statutes, including the applicable penalty and forfeiture provisions, as **Exhibit 4.**

Count 1

15. Count 1 charges SLEYMAN with attempted production and production of child pornography, in violation of Title 18, United States Code, Sections 2251(a) and 2251(e). The maximum penalty for this offense is 30 years in prison.

16. To satisfy its burden of proof and convict SLEYMAN of attempted production and production of child pornography as charged in Count 1, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (a) at the time of the offense, approximately October 28, 2020, through October 29, 2020, the victim, Minor Victim 1,[2] was under the age of 18; (b) SLEYMAN knowingly employed, used, persuaded, enticed, or coerced Minor Victim 1 to engage in sexually explicit conduct; (c) SLEYMAN acted with the purpose of producing a visual depiction of such conduct; and (d) SLEYMAN knew or had reason to know that such visual depiction would be transported across state lines or in foreign commerce, or that the visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer or cellular phone.

17. The United States will establish SLEYMAN's guilt on this count at trial through, among other things, witness testimony; law enforcement testimony;

---

[2] Under 18 U.S.C. § 3509, minor victims of abuse or exploitation are identified in court records as well as in this affidavit in an anonymized way (for example, "Minor Victim 1") to preserve and protect their privacy and maintain their confidentiality. Further, in accordance with the practice of the U.S. District Court for the District of Minnesota, adult victims of child abuse or exploitation are identified by their initials for the same purposes.

SLEYMAN's communications via Snapchat and other social media and messaging applications with Minor Victim 1; the testimony of records custodians or certified records as required to establish the interstate nexus for online communications; SLEYMAN's electronic devices containing sexually explicit chats with minors and child pornography; and attribution evidence, such as cookies or Internet Protocol ("IP") addresses, email accounts, and cellular phone data.

18. Attempted production and production of child pornography is a crime for which the United States may extradite under its laws.

Count 2

19. Count 2 charges SLEYMAN with receipt of child pornography, in violation of Title 18, United States Code, Sections 2252(a)(2) and 2252(b)(1). The maximum penalty for this offense is 20 years in prison.

20. To satisfy its burden of proof and convict SLEYMAN of receipt of child pornography as charged in Count 2, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (a) on or about July 21, 2022, SLEYMAN knowingly received a video recording that contained a visual depiction of child pornography; (b) SLEYMAN knew that the visual depiction in the video recording was of a minor engaging in sexually explicit conduct; and (c) the visual depiction had been transported across state lines or in foreign commerce, or affecting interstate commerce by any means, including by computer or cellular phone.

21. The United States will establish SLEYMAN's guilt on this count at trial through, among other things, witness testimony; law enforcement testimony;

SLEYMAN's communications via Snapchat and other social media and messaging applications with Minor Victim 3; the testimony of records custodians or certified records as required to establish the interstate nexus for online communications; SLEYMAN's electronic devices containing sexually explicit chats with minors and child pornography; and attribution evidence, such as cookies or IP addresses, email accounts, and cellular phone data.

22.     Receipt of child pornography is a crime for which the United States may extradite under its laws.

Count 3

23.     Count 3 charges SLEYMAN with enticement of a minor, in violation of Title 18, United States Code, Sections 2422(b) and 2427. The maximum penalty for this offense is life in prison.

24.     To satisfy its burden of proof and convict SLEYMAN of enticement of a minor as charged in Count 3, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (a) SLEYMAN knowingly used a facility of interstate or foreign commerce, such as a computer or cellular phone, (b) with the intent to persuade, induce, entice, or coerce an individual under the age of 18 years, specifically, Minor Victim 2, to engage in any sexual activity for which any person can be charged with a criminal offense; (c) SLEYMAN believed that Minor Victim 2 was less than 18 years of age; and (d) based upon the sexual activity that occurred in connection with Minor Victim 2, SLEYMAN could have been charged with a criminal offense under the laws of the United States or the State of Minnesota. Under U.S. law, the

term "sexual activity for which any person can be charged with a criminal offense" includes the production of child pornography.

25.     Under U.S. law, for element (d), the government is not required to prove that SLEYMAN is guilty of the underlying U.S. or State of Minnesota criminal offenses; rather, the United States is only required to show that SLEYMAN could have been charged with a criminal offense under U.S. or State of Minnesota laws based on his sexual activity with Minor Victim 2. This may be proven through evidence showing that, as a matter of law, it is a crime for any adult to engage in sexual activity with a child under the age of 16 in the State of Minnesota, and further that the defendant has actually been charged for that activity with a criminal offense. Here, SLEYMAN has actually been charged with attempted production and production of child pornography in violation of 18 U.S.C. Sections 2251(a) and 2251(e), as well as criminal sexual conduct in the first, second, and third degrees, in violation of Minnesota Statute Sections 609.342.1a(e), 609.342.2(b), 609.343.1a(e), 609.343.2(b), 609.344.1a(b), and 609.344.2(1).

26.     The United States will establish SLEYMAN's guilt on this count at trial through, among other things, witness testimony; law enforcement testimony; SLEYMAN's communications via Snapchat and other social media and messaging applications with Minor Victim 2; the testimony of records custodians or certified records as required to establish the interstate nexus for online communications; SLEYMAN's electronic devices containing sexually explicit chats with minors and child pornography, including sexually explicit images of Minor Victim 2 when she was approximately 13-14 years old; SLEYMAN's admission that he met Minor Victim 2 on Snapchat and

contacted her to meet in person; SLEYMAN's admission that he knew Minor Victim 2 was 14 years old; copies of relevant U.S. and State of Minnesota statutes; and certified copies of the Sherburne County, Minnesota, criminal complaint charging SLEYMAN with criminal sexual conduct in the first, second, and third degrees, in violation of the State of Minnesota's criminal laws.

27.     Enticement of a minor is a crime for which the United States may extradite under its laws.

Count 4

28.     Count 4 charges SLEYMAN with attempted transfer and transfer of obscene material to a minor, in violation of Title 18, United States Code, Section 1470. The maximum penalty for this offense is 10 years in prison.

29.     To satisfy its burden of proof and convict SLEYMAN of attempted transfer and transfer of obscene material to a minor as charged in Count 4, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (a) SLEYMAN knowingly used a facility of interstate or foreign commerce, such as a computer or cellular phone; (b) SLEYMAN used such facility of interstate or foreign commerce to transfer obscene material; (c) SLEYMAN transferred obscene material to an individual who had not attained the age of 16 years, Minor Victim 4; and (d) SLEYMAN knew that Minor Victim 4 was less than 16 years old. Material is "obscene" under U.S. law when an average person would find that the material, taken as a whole, (1) appeals to the prurient interest; (2) depicts or describes sexual conduct in an obviously offensive way; and (3) lacks serious literary, artistic, political, or scientific value.

30.     The United States will establish SLEYMAN's guilt on this count at trial through, among other things, witness testimony; law enforcement testimony; SLEYMAN's communications via Snapchat and other social media and messaging applications with Minor Victim 1; the testimony of records custodians or certified records as required to establish the interstate nexus for online communications; and SLEYMAN's electronic devices containing sexually explicit chats with minors and child pornography; and specifically a chat between SLEYMAN and Minor Victim 4 in which she identifies herself as a 10-year-old girl; and attribution evidence, such as cookies or IP addresses, email accounts, and cellular phone data.

31.     Attempted transfer and transfer of obscene material to a minor is a crime for which the United States may extradite under its laws.

Count 5

32.     Count 5 charges SLEYMAN with identity theft, in violation of Title 18, United States Code, Sections 1028(a)(7) and (b)(2)(B). The maximum penalty for this offense is 5 years in prison.

33.     To satisfy its burden of proof and convict SLEYMAN of identity theft as charged in Count 5, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (a) SLEYMAN knowingly transferred, possessed, or used a means of identification of another person, specifically, the name and likeness of victim A.W.; (b) SLEYMAN knew that the means of identification SLEYMAN transferred, possessed, or used belonged to another person; and (c)

13

SLEYMAN transferred, possessed, or used the means of identification without lawful authority, and knew he did not have lawful authority.

34.     The United States will establish SLEYMAN's guilt on this count at trial through, among other things, witness testimony; law enforcement testimony; SLEYMAN's communications via Snapchat and other social media and messaging applications posing as victim A.W.; and SLEYMAN's electronic devices containing evidence of SLEYMAN using victim A.W.'s means of identification.

35.     Identity theft is a crime for which the United States may extradite under its laws.

Statute of Limitations

36.     I have also included as part of **Exhibit 4** the true and accurate text of Title 18, United States Code, Sections 3282 and 3299, which are the applicable statutes of limitations for the crimes charged in the complaint and indictment.

37.     I have thoroughly reviewed the applicable statutes of limitations. The violations of federal law were properly charged in both the complaint and the indictment within the limitations period. The statute of limitations for Counts 4 and 5 requires that SLEYMAN be formally charged within five years of the date on which the offense was committed, under 18 U.S.C. Section 3282. Count 4, attempted transfer and transfer of obscene material to a minor, is alleged to have occurred by SLEYMAN on or about April 19, 2021. Count 5, identity theft, is alleged to have been committed by SLEYMAN from approximately October 28, 2020, through September 13, 2022. Separately, 18 U.S.C. Section 3299 provides that there is no statute of limitation for child sex abuse offenses,

including those charged in Counts 1 through 3 of the indictment. Therefore, because the criminal complaint was filed on October 28, 2022, and the indictment was filed on December 7, 2022, the prosecution of the charges in this case is not barred by the statute of limitations, as the charges were filed within the prescribed time.

### Summary of the Facts

38.    The facts of the case are provided in detail in the affidavit of FBI Special Agent Matthew Vogel, attached to the certified complaint in **Exhibit 1**. Set forth in the following paragraphs is a brief summary of the facts and circumstances pertinent to the extradition request, which led to the charges against SLEYMAN in the District of Minnesota, United States of America.

39.    Beginning in at least October 2020, and continuing through approximately September 13, 2022, SLEYMAN used social media online applications, such as Snapchat, to contact children between the ages of nine and 17 years old and ask them for sexually explicit images and videos online. SLEYMAN also contacted children online using Snapchat to entice them to meet in person and have sex with him. Through their investigation, U.S. law enforcement authorities have identified four child victims who were, at the time of SLEYMAN's criminal offenses, ages 9, 10, 12, and 14 years old. In addition, U.S. law enforcement authorities are aware of other child victims who are yet to be identified.

40.    On October 30, 2020, an adult female complainant contacted law enforcement authorities in Pleasant Hill, Missouri, after discovering her nine-year-old son (Minor Victim 1) had sexually explicit communications on Snapchat with an unidentified

male, later determined to be SLEYMAN. The mother reported that she had reviewed Minor Victim 1's cell phone and found messages from a Snapchat account identified by the display name "its.[A.W.]." Pleasant Hill police responded and reviewed Minor Victim 1's phone and took photographs of messages that were sent on approximately October 28 and 29, 2020. Further investigation of Snapchat account records showed that SLEYMAN was the one exchanging explicit messages with Minor Victim 1 under Snapchat display name "its.[A.W.]." Also, review of Snapchat records showed that the user ID for Snapchat display name "its.[A.W.]" was identified to be "[A.]_[W.]81."[3] Through this account, SLEYMAN asked Minor Victim 1 to play with his buttocks, take off his clothes, bend over to expose his buttocks, fondle his penis, and more. SLEYMAN also had a live video call and exchanged images with Minor Victim 1 depicting the poses described by SLEYMAN.

41.    "A.W." was another of SLEYMAN's victims. In the "[A.]_[W.]81" Snapchat account SLEYMAN used to contact minors, SLEYMAN used the name and photograph of A.W., an individual from Fargo, North Dakota, whom SLEYMAN had befriended in approximately 2015 or 2016 when A.W. was about 15 years old. At the time, SLEYMAN was about 22 years old and lived in Moorhead, Minnesota. A.W. stated that at one point when they were together in the back of a van in a parking lot, SLEYMAN attempted to touch A.W. inappropriately. A.W. rejected SLEYMAN's advances, and the two never talked about it again. The friendship between A.W. and SLEYMAN deteriorated, and they lost contact. However, A.W. had given SLEYMAN

---

[3] Snapchat accounts have a unique user ID and a user-selectable "display name."

access to his old Snapchat account, the user ID of which was a variation on A.W.'s name, in approximately 2015 or 2016. A.W. adamantly denied any knowledge of SLEYMAN's more recent use of Snapchat accounts using A.W.'s name and denied giving SLEYMAN permission to create accounts and contact others in A.W.'s name.

42.     From August 2021 through September 2022, SLEYMAN used Snapchat to contact a girl who was 13 years old at the time (Minor Victim 2), and to entice her to meet him in person for sex. On July 13, 2022, law enforcement authorities in Elk River, Minnesota, responded to a complaint of a suspicious vehicle parked in a specific neighborhood. On arrival, police officers found SLEYMAN in the driver seat and Minor Victim 2 in the front passenger seat. SLEYMAN lied about Minor Victim 2's name and identity, stating she was his niece, and told the officer he was trying to take his niece home. When officers discovered Minor Victim 2's identity, SLEYMAN admitted he had met her online but denied any sexual involvement with Minor Victim 2.

43.     U.S. law enforcement interviewed Minor Victim 2 in August 2022 and December 2022. Minor Victim 2 said that she met SLEYMAN through Snapchat in August 2021. SLEYMAN asked to meet in person and told the girl to say she was his niece if they were ever caught together. Minor Victim 2 said SLEYMAN gave her marijuana, psilocybin mushrooms, lingerie, a sex toy, and other gifts. Minor Victim 2 stated that SLEYMAN brought her to hotels in Sherburne County, Minnesota, to SLEYMAN's apartment in Bloomington, Minnesota, and elsewhere. SLEYMAN and Minor Victim 2 had sex at these locations, and SLEYMAN recorded them having sex. Minor Victim 2 stated that she sometimes sent naked photographs of herself on Snapchat

17

to SLEYMAN and knew that SLEYMAN downloaded those messages to his cell phone by screenshotting those messages.

44.   On September 1, 2022, Elk River, Minnesota police officers executed a warrant to seize SLEYMAN's cell phone at his workplace at a computer support company. SLEYMAN asked if he could speak with officers during that time. SLEYMAN voluntarily unlocked and provided the passcode to his phone. SLEYMAN acknowledged he had met Minor Victim 2 via Snapchat. He reported that he met Minor Victim 2 in person approximately 10-12 times. SLEYMAN said Minor Victim 2 smoked marijuana (described as "weed") that she had obtained on her own. Unsolicited, SLEYMAN stated he did not provide his "own stuff" (which the officers understood to mean marijuana) to her, but admitted he did smoke marijuana.

45.   SLEYMAN admitted that he had stayed in a hotel with Minor Victim 2 before, but only because he felt tired when he drove a long distance on his way up to Duluth, Minnesota. With prompting by the officers, SLEYMAN acknowledged he planned to stay in a Princeton, Minnesota hotel with Minor Victim 2 on one occasion, but was caught by local law enforcement. SLEYMAN denied having sex with Minor Victim 2 and insisted he had only spent time "hanging out" with her. SLEYMAN said Minor Victim 2 had tried to "turn on" or arouse SLEYMAN before, but he had stopped her. He told investigators that Minor Victim 2 wanted more from their relationship, but SLEYMAN was "happy to wait" until she was 16 so he would not get in trouble. SLEYMAN admitted to buying a sex toy and other items for Minor Victim 2.

18

SLEYMAN also admitted he sent pictures of his penis to Minor Victim 2, and said those photos were saved on his phone.

46.     During this voluntary recorded interview, SLEYMAN also admitted he had photos on his phone depicting girls approximately ages 15 and older. SLEYMAN estimated he had saved roughly six to eight photos that he received from girls on Snapchat. SLEYMAN said he was aware there was a problem with him having such photos and told the interviewing detective where the photos were stored, noting, "I know I'm going to be arrested for these nudes."

47.     On September 2, 2022, the day after authorities seized his cell phone, U.S. law enforcement investigators executed a search warrant for SLEYMAN's residence and vehicle in Bloomington, Minnesota. In searching SLEYMAN's apartment, authorities found computers and digital storage media. In searching SLEYMAN's vehicle, police located handwritten notes appearing to be from Minor Victim 2 and a drawing with Minor Victim 2's first name on it. These items were located inside of the spare tire compartment in the rear of the vehicle.

48.     The following month, in October 2022, the FBI executed search warrants for SLEYMAN's electronic devices and his various Snapchat, email, and social media accounts. The U.S. authorities discovered child pornography and evidence of child exploitation on SLEYMAN's electronic devices and in his Snapchat accounts.

49.     Review of SLEYMAN's seized phone showed a six-minute screen recorded video of a live video call between SLEYMAN and a 12-year-old girl from the Mille Lacs, Minnesota region (Minor Victim 3). The video begins with SLEYMAN

reviewing chat and snaps with Minor Victim 3, then turning on the video call capability. As the video call is initiated, a portion of SLEYMAN's face is visible in the corner of the screen before the camera view is switched to the front-facing camera. In the front facing camera, SLEYMAN is seen masturbating. In the main portion of the screen, Minor Victim 3 can be seen posing and rubbing her vagina over her clothes before she pulls her shorts to the side and begins masturbating. The depictions on the screen are consistent with a chat stored in one of SLEYMAN's Snapchat accounts, "needcuminmymout." For example, the screen recording appears to show SLEYMAN typing, "Could u doggy and show your ass naked then love to cum while u show your tits" in the chat. That exact line appears in the chat stored in SLEYMAN's Snapchat records.

50.     SLEYMAN's phone also contained a record of communications with a 10-year-old girl. On April 19, 2021, SLEYMAN used Snapchat account "[A.]_[W.]81" to communicate with a girl who said in the chat that she was 10 years old (Minor Victim 4). SLEYMAN identified himself to the girl as "Abe" and sent her a video depicting an adult male masturbating to ejaculation. This was significant to FBI Special Agent Vogel, because in his training and experience, "Abe" is a commonly used English nickname for the name Ibrahim.

51.     In reviewing content stored on SLEYMAN's cell phone and in his Snapchat accounts, U.S. law enforcement believes there are likely several other minor victims to be identified. In reviewing the cell phone, authorities recovered numerous screenshots of Snapchat chats, most of which are sexual in nature. SLEYMAN appears to have screen recorded chats, snaps, and video calls with chat partners, several of whom

appear to be minors. Efforts to identify minors depicted are ongoing. In addition, the cell phone contained cached images that FBI Special Agent Vogel recognized as more commonly traded child pornography. These include images which appear to be still shots of videos depicting the rape of prepubescent children. Both male and female minors are depicted in these images.

52.     Three days after U.S. authorities executed a search warrant at SLEYMAN's residence in Bloomington, Minnesota, on September 5, 2022, SLEYMAN purchased round-trip airfare from Minneapolis, Minnesota, to Abu Dhabi, United Arab Emirates ("UAE"), departing on September 6, 2022, and returning on September 26, 2022. According to U.S. government records, on September 6, 2022, SLEYMAN boarded a Delta Airlines flight from Minneapolis, Minnesota, to Paris, France, and then boarded a connection from Paris, France, to Abu Dhabi, UAE. SLEYMAN did not board his scheduled September 26, 2022, flight back to the United States. According to U.S. Customs and Border Protection, SLEYMAN has not returned to the United States since his departure to the UAE in September 2022.

53.     On November 15, 2022, INTERPOL issued a red notice indicating that SLEYMAN was a fugitive wanted for prosecution in the United States for federal and state criminal offenses. On November 25, 2022, the INTERPOL Bureau in Abu Dhabi, UAE, informed the INTERPOL Bureau in Washington, D.C., United States, that SLEYMAN was detained in the UAE on or about November 16, 2022.

## Identification Information

54.    IBRAHIM GHASSAN SLEYMAN, also known as "Abe Sleyman" and "Ibrahim Suleiman," is a citizen of the United States who was born in Abu Dhabi, United Arab Emirates, in 1993. He is described as a white, Middle Eastern male with short, black hair. He is approximately 168 centimeters (approximately 5 feet, 5 inches) tall. I have attached to this affidavit as **Exhibit 5** two photographs of SLEYMAN: the first photograph is from SLEYMAN's State of Minnesota driver's license that was obtained by law enforcement authorities through their investigation of the crimes outlined above, and identified as SLEYMAN by Special Agent Vogel; and the second photograph is SLEYMAN as identified by U.S. law enforcement authorities and captured in an officer's body-worn camera footage on September 2, 2022, when officers executed a search warrant for SLEYMAN's residence and vehicle in Bloomington, Minnesota.

## Conclusion

55.    I have attached the following documents and exhibits in support of this request for the extradition of SLEYMAN:

> **Exhibit 1** is a certified copy of the complaint, dated October 28, 2022;
>
> **Exhibit 2** is a certified copy of the arrest warrant, dated October 28, 2022;
>
> **Exhibit 3** is a certified copy of the indictment, dated December 7, 2022;
>
> **Exhibit 4** is a copy of the relevant United States statutes; and
>
> **Exhibit 5** contains two photographs of Defendant IBRAHIM GHASSAN SLEYMAN.

56.     This affidavit, including its exhibits, contains sufficient evidence under U.S. law to support a finding of probable cause to believe SLEYMAN committed the crimes charged and to support a request for extradition. The affidavit and its exhibits therefore support the request of the United States of America that IBRAHIM GHASSAN SLEYMAN, also known as "Abe Sleyman" and "Ibrahim Suleiman," be extradited from the United Arab Emirates to the United States of America, District of Minnesota, for prosecution on the offenses described above, and that he be detained pending the determination of his extradition, and any appeal thereof.

Executed on January 19 , 2023, in Saint Paul, Minnesota, United States of America.

HILLARY A. TAYLOR
Special Assistant United States Attorney
U.S. Attorney's Office for the District of
Minnesota
Attorney ID No. 0398557

SUBSCRIBED and SWORN before me on January 19 , 2023, in Saint Paul, Minnesota, United States of America.

THE HONORABLE JOHN F. DOCHERTY
United States Magistrate Judge
District of Minnesota

23