# EXHIBIT 1

HAT:nab

AO 91 (Rev. 11/11) Criminal Complaint                                    2022R00490

## UNITED STATES DISTRICT COURT
### for the
### District of Minnesota

| | |
|---|---|
| UNITED STATES OF AMERICA | **FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 3509(d)(2) AND LOCAL RULE 49.1(c)(1)(G)** |
| v. | |
| IBRAHIM GHASSAN SLEYMAN | Case No. 22-MJ-890 (TNL) |

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

### COUNT 1 – Production of Child Pornography

From at least on or about October 28, 2020, and continuing through on or about October 29, 2020, in the District of Minnesota and elsewhere, IBRAHIM GHASSAN SLEYMAN attempted to and did employ, use, persuade, induce, entice, and coerce Minor Victim 1, who was then approximately 9 years old, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported using any means and facility of interstate and foreign commerce, transported in and affecting interstate and foreign commerce, and was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, all in violation of 18 U.S.C. §§ 2251(a) and (e).

### COUNT 2 – Receipt of Child Pornography

On or about July 21, 2022, in the District of Minnesota and elsewhere, IBRAHIM GHASSAN SLEYMAN attempted to and did knowingly receive a visual depiction, to wit, a live video call in which Minor Victim 3 was depicted masturbating. The visual depictions of the live video call were received using a means or facility of interstate commerce by any means including by computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, and such visual depiction is of such conduct, all in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1).

### COUNT 3 – Child Enticement Using a Facility of Interstate Commerce

From on or about July, 2021 through on or about July 13, 2022, in the District of Minnesota and elsewhere, IBRAHIM GHASSAN SLEYMAN, did use the mail or any facility or means of interstate or foreign commerce to knowingly persuade, induce, entice, and coerce Minor Victim 2 to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, to wit, Criminal Sexual Conduct in the first, second, and third degrees, in violation of Minnesota laws, and attempted to do so, all in violation of 18 U.S.C. § 2422(b).

### COUNT 4 – Transfer of Obscene Material to a Minor

On or about April 19, 2021, using the mail or any facility or means of interstate or foreign commerce, knowingly transferred obscene matter to another individual who had not attained the age of 16 years, knowing that such other individual had not attained the age of 16 years, and attempted do so. The obscene matter is a video file identified as b~EiQSFURjMTU4d2J5VVVlYVFiRHBvTHpKQRoAGgAyAQNlAlAEYAE~v4.mp4. The file is a video approximately 22 seconds in duration. It depicts an adult male masturbating to ejaculation, all in violation of 18 U.S.C. § 1470; and

AO 91 (Rev. 11/11) Criminal Complaint (Page 2)                                    2022R00490

### COUNT 5 – Identity Theft

From at least on or about October 28, 2020, and continuing through at least on or about September 13, 2022, in the District of Minnesota and elsewhere, IBRAHIM GHASSAN SLEYMAN knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, to wit victim A.W., with the intent to commit, and to aid or abet, and in connection with unlawful activity that constituted a violation of federal law, to wit the offense alleged in Count 1, all in violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D).

I further state that I am a Federal Bureau of Investigation Special Agent and that this complaint is

based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:     ☒Yes     ☐ No

_____
*Complainant's Signature*

SUBSCRIBED and SWORN before me                    Matthew Vogel, Special Agent
by reliable electronic means (Zoom and email)        Federal Bureau of Investigation
pursuant to Fed. R. Crim. P. 41(d)(3).                    *Printed name and title*

Date:        October 28, 2022                    _____
                                                            *Judge's Signature*

City and State: Minneapolis, MN                    The Honorable Tony N. Leung
                                                            United States Magistrate Judge
October 28, 2022                                            *Printed Name and Title*

A true printed copy in _____ 2 _____ sheet(s)
of the electronic record filed on 10-28-22,
in the United States District Court
for the District of Minnesota.
CERTIFIED, December 13th, 2022
Kate M. Fogarty, Clerk
BY: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA

v.

IBRAHIM GHASSAN SLEYMAN

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 3509(d)(2) AND L. R. 49.1(c)(1)(G)**

Case No. 22-mj-890 TNL

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Matthew Vogel, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the United States Department of Justice, Federal Bureau of Investigation (FBI), and have been so employed since July 2010. I am currently assigned to the Minneapolis Division and the Minnesota Child Exploitation Task Force, where my investigative responsibilities include investigation of child sexual abuse and exploitation crimes such as production, possession, receipt, and distribution of child pornography. I have gained knowledge and experience through training at the FBI Academy, in service training, and everyday work in conducting these types of investigations. I have received training in the area of child pornography and child exploitation investigations and have reviewed numerous examples of child pornography as defined at 18 U.S.C. § 2256, in various forms of media, including computer media.

2. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by 18 U.S.C §§ 3052 and 3107 to conduct investigations of, and to make arrests for, violations of federal criminal statutes.

## PURPOSE OF AFFIDAVIT

3.    I make this affidavit in support of an application for a Criminal Complaint charging IBRAHIM GHASSAN SLEYMAN (DOB XX/XX/1993[1]) with Production of Child Pornography, and attempt in violation of 18 U.S.C. §§ 2251(a) and (e); Receipt of Child Pornography, and attempt in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); Child Enticement Using a Facility of Interstate Commerce in violation of 18 U.S.C. § 2422(b); Transfer of Obscene Material to a Minor, and attempt in violation of 18 U.S.C. § 1470; and Identity Theft in violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D), as follows:

> COUNT 1: From at least on or about October 28, 2020, and continuing through on or about October 29, 2020, in the District of Minnesota and elsewhere, IBRAHIM GHASSAN SLEYMAN attempted to and did employ, use, persuade, induce, entice, and coerce Minor Victim 1, who was then approximately 9 years old, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported using any means and facility of interstate and foreign commerce, transported in and affecting interstate and foreign commerce, and was produced and transmitted using materials that had been mailed, shipped, and transported in and

---

[1] Per local rules and 18 U.S.C. § 3509, I have partially redacted personally identifying information, such as dates of birth, from this affidavit. Unless otherwise noted, this information is known to me and available to the Court.

affecting interstate and foreign commerce by any means, including by computer, all in violation of 18 U.S.C. §§ 2251(a) and (e);

COUNT 2: On or about July 21, 2022, in the District of Minnesota and elsewhere, IBRAHIM GHASSAN SLEYMAN attempted to and did knowingly receive a visual depiction, to wit, a live video call in which Minor Victim 3 was depicted masturbating. The visual depictions of the live video call were received using a means or facility of interstate commerce by any means including by computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, and such visual depiction is of such conduct, all in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1);

COUNT 3: From on or about July, 2021 through on or about July 13, 2022, in the District of Minnesota and elsewhere, IBRAHIM GHASSAN SLEYMAN, did use the mail or any facility or means of interstate or foreign commerce to knowingly persuade, induce, entice, and coerce Minor Victim 2, date of birth XX/XX/2008, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, to wit, Criminal Sexual Conduct in the first, second, and third degrees, in violation of Minnesota laws, and attempted to do so, all in violation of 18 U.S.C. § 2422(b);

COUNT 4: On or about April 19, 2021, using the mail or any facility or means of interstate or foreign commerce, knowingly transferred obscene matter to another individual who had not attained the age of 16 years, knowing that such other individual had not attained the age of 16 years, and attempted do so. The obscene

3

matter is a video file identified as b~EiQSFURjMTU4d2J5VVVlYVFiRHBvTHpKQRoAGgAyAQNIAlAEYAE~v 4.mp4. The file is a video approximately 22 seconds in duration. It depicts an adult male masturbating to ejaculation, all in violation of 18 U.S.C. § 1470; and

COUNT 5: From at least on or about October 28, 2020, and continuing through at least on or about September 13, 2022, in the District of Minnesota and elsewhere, IBRAHIIM GHASSAN SLEYMAN knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, to wit victim A.W., with the intent to commit, and to aid or abet, and in connection with unlawful activity that constituted a violation of federal law, to wit the offense alleged in Count 1, all in violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D).

4.      The facts set forth in this affidavit come from my personal review of documents and evidence, my training and experience, information obtained from other law enforcement officers, evidence gathered pursuant to prior search warrants, and information from minor victims and witnesses. Because this affidavit is submitted for the limited purpose of establishing probable cause to support the contemporaneously filed application, it does not include each and every fact known to me or to other investigators.

## PROBABLE CAUSE[2]

### Minor Victim 1[3]

5.      On October 30, 2020, Person 1 contacted Pleasant Hill, Missouri police after discovering her son, Minor Victim 1, DOB XX/XX/2011, had sexually focused communications on Snapchat with an unidentified male. Person 1 reported she was reviewing her son's phone when she found messages from a Snapchat account identified as its.alexwright[4]. Pleasant Hill police responded and reviewed Minor Victim 1's phone, and took photographs of messages that appear to have begun on or about October 28, 2020. I have reviewed the photographs and found them to contain the following content[5]:

its.alexwright – Love it. No still at work. Could i see your ass also 

Minor Victim 1 – Where do you work

its.alexwright – Hm Computer company

Minor Victim 1 – oh

its.alexwright – Support. Have u tried playing with your ass?

Minor Victim 1 – no

---

[2] Because the communications described herein occurred between parties in different locations in the United States and the records discussed use timestamps in Universal Time Coordinated (UTC), dates shown below are "on or about" dates. For example, if a victim sent a message from Minnesota at 12:30 A.M. on January 1, 2022, local time, it would still be December 31, 2021 for a suspect receiving the message in the Pacific Time Zone.

[3] Unless otherwise noted, anonymized names are known to me and available to the Court upon request.

[4] As discussed elsewhere in this affidavit, Snapchat has a unique User ID and a user-selectable "display name." In my review of investigative documentation, it appears that previous investigators may have mistaken the display name "its.alexwright" for a User ID. This error appears to have led to an initial misidentification of a suspect.

[5] I have transcribed the text as shown on the screen, including typographical errors.

its.alexwright – Hm. Are u open to try? Or nah

Minor Victim 1 – Sure

its.alexwright – Like me i dont lije playing with mine but love when someone plays with it.

Minor Victim 1 – Ok

its.alexwright – I like love when someone puts his dick in me.

Minor Victim 1 – Do you want me to play with my ass

its.alexwright – Maybe later when i am done?

[…]

Minor Victim 1 – So I could see your cock

its.alexwright – Dont know

Minor Victim 1 – Ok

its.alexwright – I wish i can show u now but people beside mr Me 😅

[…]

its.alexwright – Are u ready

Minor Victim 1 – Yea

its.alexwright – 1 sec k

its.alexwright – Ok. Back. So would u play with your ass?

Minor Victim 1 – Yea

its.alexwright – Idc[6] if u finger it or no?

Minor Victim 1 – What should I do with my ass

its.alexwright – So do u have a lotion 😵

Minor Victim 1 – No I don't. Where is your cock at bro I want to see it

its.alexwright – Ok but i need u to do it in the bathroom ok?

Minor Victim 1 – Ok

---

[6] "I don't care."

its.alexwright – [Opened Snap (image or video file)—not retained on the device. The information on the device indicates the file was viewed by Minor Victim 1.]

its.alexwright – So u put the phone standing on the door at the floor

Minor Victim 1 – What I don't understand

its.alexwright – Like this [Opened Snap (image or video file)—not retained on the device. The information on the device indicates the file was viewed by Minor Victim 1.]

Minor Victim 1 – Ok 1 sec

its.alexwright – And then take off your clothes and u bend over and showing your ass to me

Minor Victim 1 – Ok

its.alexwright – And maybe rub it or finger it and play with your dick if u could. Tell me when to call.

Minor Victim 1 – [Opened Snap (image or video file). Information on the screen indicates its.alexwright received and played the file.]

its.alexwright – Yes but on your knees. And we facetime ok?

Minor Victim 1 – Ok wait

its.alexwright – Everything off ok 😊 😊

Minor Victim 1 – Why my bathroom tho

its.alexwright – So parents doesnt walk on u

Minor Victim 1 – Ok I don't want to take off my clothes tho

its.alexwright – Pls. Just pants Not t shirt Call u now?

[…]

6.    For context, Minor Victim 1's phone showed the following display during a portion of the transcribed chat—



7.    Minor Victim 1 was interviewed by a Child Forensic Interviewer. The interview was recorded. I have reviewed a summary report of the interview. According to the summary report, Minor Victim 1 recalled chatting with "Alex Wright" on Snapchat. After a brief chat, "Alex" sent pictures of his penis to Minor Victim 1. "Alex" asked Minor Victim 1 if he was "bi" or straight and Minor Victim 1 replied that he was straight. Nevertheless, "Alex" asked for pictures of Minor Victim 1's penis and "butt" which Minor Victim 1 sent to "Alex." "Alex" also videochatted with Minor Victim 1. During the video chat, "Alex" masturbated with Minor Victim 1 "played" with his "butt." Minor Victim 1 recalled that "Alex" was an adult male from Minnesota who worked for a computer company.

## Identification of "its.alexwright"

8.     In my review of investigative records, it appears that investigators initially mistakenly subpoenaed records for Snapchat ID its.alexwright when in reality, the account chatting with Minor Victim 1 was a different account with *display name* its.alexwright. This error led to the identification of victim A.W., of Fargo, North Dakota as a suspect in the early stages of the child pornography investigation. For the reasons set forth below, A.W. has been ruled out as a suspect in this investigation.

9.     Investigators obtained a search warrant in the District of North Dakota for Snapchat ID its.alexwright. They reviewed responsive records and found the account was owned and used by A.W., but did not find any indication of communications with Minor Victim 1. Investigators also obtained a District of North Dakota search warrant for A.W.'s residence. Upon executing that search warrant, investigators interviewed A.W. who adamantly denied any knowledge of the matter.

10.     North Dakota-based investigators obtained a District of North Dakota search warrant for Minor Victim 1's Snapchat account. Responsive records showed that between October 28, 2020, and October 30, 2020, Minor Victim 1 chatted with Snapchat ID alex_wright81. Records obtained later in the investigation showed ID alex_wright81 had a display name of its.alexwright.

11.     During a voluntary interview with law enforcement, A.W. stated his Snapchat ID is its.alexwright, but his display name was simply, "Alex." Approximately

9

seven or eight years prior, A.W. had a different Snapchat account, alexx_wrighttt.[7] Wright used that account during his freshman year in high school, but then gave the account password to a friend called IBRAHIM SLEYMAN. Wright also gave SLEYMAN access to other online accounts.

12.    SLEYMAN lived in Moorhead, Minnesota and was approximately seven years older than A.W. A.W. stated that at one point, SLEYMAN attempted to "groom" A.W. and attempted to touch A.W. inappropriately while they were together in the back of a van in a parking lot. A.W. rejected SLEYMAN's advance and the two never talked about it again, but the friendship deteriorated.

<u>Search of Snapchat ID alex_wright81</u>

13.    Investigators obtained a District of North Dakota search warrant for Snapchat ID alex_wright81 in case 22-MJ-20. Records obtained responsive to that search warrant did not include communications with Minor Victim 1, but did include significant evidence of chats with minors. For example, in January and February 2021, the account contained chats with other Snapchat users who represented themselves to be between ages 11 and 17. The user of alex_wright81 often purported to be 16 or 17 years old.

14.    On March 9, 2021, alex_wright81 chatted with an identified Snapchat account. The user of the account represented herself to be a 13-year-old girl. Based on the

---

[7] As documented below, this account also had a display name of "its.alexwright." The account is still associated with A.W.'s phone number, but has email address samerfkfk@gmail.com as the registration email account. Records from Google LLC indicate samerfkfk@gmail.com is likely an account controlled by SLEYMAN.

context of the conversation, the two appear to have communicated prior to the contents of the records—possibly on another platform or account. The conversation largely focused on sex. In this instance, alex_wright81 purported to be in his 20s. alex_wright81 wrote that he remembered the girl was from Minnesota. alex_wright81 provided the girl with information on purchasing a dildo and suggested, "dont buy big stuff u cant hide." He continued, "im remembering your pussy its getting me hard now [...] Can i ask u something weird? How many fingers u tried?" The girl replied, "2." alex_wright81 continued, "one more weird one did u bleed or no? Like when u did it?" The girl replied, "No" alex_wright81 continued, "damn i wana see u doing 2."

15.     In the late-night hours of August 17, 2021, alex_wright81 initiated a chat with an identified Snapchat account. alex_wright81 purported to be a 25-year-old from Moorhead, Minnesota. I am aware that at this time, SLEYMAN lived in the vicinity of Moorhead. The receiving account represented herself as a 15-year-old girl from somewhere approximately 100 miles from Moorhead. The two discussed their respective ages. On August 18, 2021, alex_wright81 sent the girl an image file identified as b~EiQSFXpENDVkM0hIeW1xZW1kdjZtcGJYdRoAGgAyAQNIAlAEYAE~v4.jpg. The file is an image depicting an adult male holding an erect penis. The girl replied, "that is small." alex_wright81 then bragged, "but its thick tho."

16.     On August 18, 2021, alex_wright81 engaged in a chat with an identified Snapchat account. The user of that account represented herself as a 14-year-old girl from Florida. alex_wright81 wrote, "If i was there would u let me rub and lick your feet and

pussy? […] The girl called alex_wright81 a pedophile and wrote, "go jerk off to a 18 year old instead." alex_wright81 responded, "would u show me your pussy while u pee pls."

17.    IP logs associated with the account reflect usage of the account on an IP address assigned to SLEYMAN's then residence in Moorhead, Minnesota. As documented further below, the registration email address for the account is also attributable to SLEYMAN.

18.    On April 19, 2021, alex_wright81 was engaged in a sexually focused chat with a Snapchat user who represented herself to be a 10-year-old girl. The girl wrote, "what's your real name?" alex_wright81 replied, "Abe." In my training and experience, I am aware that "Abe" is a commonly used English nickname for Ibrahim. alex_wright81 sent a video file identified in Snapchat records as b~EiQSFURjMTU4d2J5VVVlYVFiRHBvTHpKQRoAGgAyAQNlAlAEYAE~v4.mp4. The file is a video approximately 22 seconds in duration. It depicts an adult male masturbating to ejaculation.

### Minor Victim 2

*Elk River Police Receive a Suspicious Vehicle Complaint*

19.    At approximately 11:47 P.M. on July 13, 2022, Elk River police responded to a complaint of a suspicious vehicle parked on the 20300 block of Wilson Street NW, Elk River, Minnesota. The reporting party had seen the vehicle travel through the neighborhood several times, then turn off its lights. On arrival, the responding officer found SLEYMAN in the driver seat and Minor Victim 2 in the front passenger seat. The vehicle was registered to SLEYMAN. Minor Victim 2 used the hood of a hooded sweatshirt to

cover her face from the officer's view. SLEYMAN told the officer that he lived in Morehead, Minnesota, that he was Minor Victim 2's uncle, that Minor Victim 2's surname was SLEYMAN, and that he was taking Minor Victim 2 to her home. SLEYMAN told the officer they had stopped there after his phone lost signal and he could no longer access his GPS.

20.    The responding officer returned to his squad and identified SLEYMAN by reviewing police and driver license records. The officer found police records regarding SLEYMAN in a report on a previous call for service dated June 28, 2022. In that report, Minor Victim 2's mother contacted police after Minor Victim 2 became unruly. As police were trying to resolve the domestic complaint, Minor Victim 2's father told police about a recent incident when Minor Victim 2 left home and was later found with SLEYMAN in Isle, Minnesota.

21.    The responding officer recognized Minor Victim 2's address as being nearby.[8] The officer returned to SLEYMAN and again asked what SLEYMAN's relationship to the passenger was. SLEYMAN restated that he was her uncle and that her last name was also SLEYMAN. After the officer stated he knew Minor Victim 2's identity and that SLEYMAN was lying, SLEYMAN admitted that he had lied.

22.    SLEYMAN told the officer he met Minor Victim 2 on Snapchat and that he knew she was 14 years old. SLEYMAN stated he picked up Minor Victim 2 at approximately 11:45 P.M. and that they were only talking. SLEYMAN stated he had met

_____

[8] Minor Victim 2's residence is approximately .4 miles from the noted location.

with Minor Victim 2 approximately 10-12 times since they first met in late November or early December 2021. SLEYMAN moved to Bloomington, Minnesota in late December 2022 and continued meeting with and talking to Minor Victim 2.

23.     SLEYMAN admitted he had been confronted by Minor Victim 2's father in Isle, Minnesota about his contact with Minor Victim 2. SLEYMAN also confirmed he continued to contact Minor Victim 2 despite her parents' objections. SLEYMAN continued to deny any sexual contact with Minor Victim 2 and stated he was only there to help her because he believed she may have been sexually abused by other men.

24.     During the above-described incidents, Minor Victim 2 denied any sexual contact with SLEYMAN and officers observed no injuries. The officers took Minor Victim 2 back home and released SLEYMAN.

*Forensic Interviews of Minor Victim 2*

25.     On August 12, 2022, Elk River police observed a forensic interview of Minor Victim 2 conducted by a Sherburne County Health and Human Services social worker. During the recorded interview, Minor Victim 2 disclosed that she had known SLEYMAN for approximately a year, or since September 2021. Minor Victim 2 stated she had been looking for marijuana online and that is how she ended up meeting SLEYMAN on Snapchat. After approximately a month of interacting, Minor Victim 2 told SLEYMAN she was 13. Minor Victim 2 further disclosed that SLEYMAN provided her marijuana sometimes when they met in person. Minor Victim 2 felt that she was in a relationship with SLEYMAN and stated she had "feelings" for him.

26.     Minor Victim 2 disclosed that she had sex with SLEYMAN multiple times. Minor Victim 2 disclosed that the first time she had sex with SLEYMAN was on her 14th birthday. She could not recall whether the first time they had sex was in a hotel or at SLEYMAN's apartment. Minor Victim 2 stated that she had sexual intercourse with SLEYMAN in both local hotels and at his residence in Bloomington. Minor Victim 2 believed SLEYMAN paid for the hotel rooms in which they had sex, but denied SLEYMAN paid her in exchange for sex. Minor Victim 2 also acknowledged that SLEYMAN gave her marijuana and gifts, but also denied these things were provided in exchange for sex.

27.     Minor Victim 2 disclosed that SLEYMAN instructed her to tell police she was his niece if they were ever caught together. Minor Victim 2 believed SLEYMAN told her to do so to avoid trouble with law enforcement.

28.     In addition to having sexual intercourse with SLEYMAN at his request, Minor Victim 2 disclosed that she sent images and videos depicting herself naked to SLEYMAN and that SLEYMAN reciprocated by sending images and videos of himself nude to Minor Victim 2. Minor Victim 2 also disclosed that she had seen photos of other nude girls who she believed to be approximately 16 or older on SLEYMAN's phone.

29.     After the August 12 forensic interview, Minor Victim 2 disclosed additional information regarding SLEYMAN to her mother. As a result, a second forensic interview took place on August 25, 2022. During the second forensic interview, Minor Victim 2 disclosed that she first met SLEYMAN in August 2021, prior to her 14th birthday. They chatted on Snapchat for approximately three weeks. During those weeks, SLEYMAN

15

asked Minor Victim 2 to send him nude photographs. Minor Victim 2 told SLEYMAN that she did not want to send him pictures, but agreed to meet him for sex instead if SLEYMAN provided Minor Victim 2 with marijuana. The meeting was pre-planned on Snapchat. Minor Victim 2 reported that she also used mushrooms with SLEYMAN and thereafter ended up in a "mental hospital." The first time they had sex, Minor Victim 2 was 13 years old.

30.    Minor Victim 2 stated she met with SLEYMAN in hotels located in Elk River, Ramsey, Anoka, Princeton, and Becker. When they met in hotels, SLEYMAN would register and pay for the room while Minor Victim 2 waited outside. SLEYMAN would later let her in by a side door and instructed her to walk separately from him in the hotel.

31.    Minor Victim 2 recalled there was one time she clearly remembered SLEYMAN recorded them having sex, but stated that SLEYMAN later deleted that video. SLEYMAN told her he wanted to make the video for his own pleasure when they were not able to meet in person. Minor Victim 2 sometimes sent naked photos of herself on Snapchat and knew that SLEYMAN screenshotted those messages.

32.    Minor Victim 2 continued to deny that SLEYMAN paid her for sex, however, she acknowledged that he gave her gifts, drugs, and offered to take her shopping.

33.    SLEYMAN was nervous about being caught with Minor Victim 2 and told her he could get 30 years to life in prison if they were caught together.

34.     Minor Victim 2 told the interviewer that SLEYMAN allowed Minor Victim 2 to access his phone when they were together. SLEYMAN gave Minor Victim 2 the passcode for his phone which Minor Victim 2 provided to the interviewer.

*Elk River Police Detectives Make Contact with SLEYMAN*

35.     On September 1, 2022, Elk River police obtained a Hennepin County search warrant to seize and search SLEYMAN's smartphone. Elk River police located SLEYMAN at his place of employment—a computer support company in Minneapolis, Minnesota. The interaction was audio and video recorded. I have reviewed the video recorded interview and the interviewing detective's report. Police located SLEYMAN's phone on his person. Officers seized an LG V60 ThinQ, serial number 004VTWR003713. During this interaction, SLEYMAN asked if he could talk with the officers. SLEYMAN voluntarily unlocked and provided the passcode to his phone. The passcode provided by SLEYMAN matched information provided by Minor Victim 2 referenced above.

36.     SLEYMAN told officers he needed to talk about the reasons for the search warrant. SLEYMAN acknowledged he had received a protection order regarding Minor Victim 2 from the Sheriff's office and that he had not violated that order. The interviewing detective informed SLEYMAN that the search warrant related to previous contacts with the Minor Victim 2. SLEYMAN stated, "I can definitely assist you with this process," and offered to help solve the investigation regarding Minor Victim 2.

37.     In addition to information provided to the Elk River patrol officer, SLEYMAN reported he first communicated with Minor Victim 2 in August 2021.

17

SLEYMAN offered his Snapchat ID as ibrahimsuli[9] and acknowledged he used that account to communicate with Minor Victim 2. SLEYMAN stated he had previously used other Snapchat accounts, but could not remember them. SLEYMAN offered that those account IDs were saved on SLEYMAN's phone. SLEYMAN also used Google Meets to video chat with Minor Victim 2. SLEYMAN disclosed that he had not given his phone number to Minor Victim 2 and he did not have her phone number. Somehow, Minor Victim 2's mother had his phone number.

38.     SLEYMAN reported that he met with Minor Victim 2 in person approximately 10-12 times. These meets occurred in Minnesota, including Elk River, Becker, Princeton, and Isle. SLEYMAN denied any sexual contact with Minor Victim 2 and insisted he had only spent time "hanging out" with her. They only drove around and talked. Minor Victim 2 smoked "weed" that she obtained on her own. Unsolicited, SLEYMAN stated he did not provide his "own stuff" to her, although he does smoke marijuana. SLEYMAN stated that Minor Victim 2's mother had accused him of providing Minor Victim 2 with marijuana and again denied doing so.

39.     Sometimes, on his way up to Duluth, SLEYMAN would feel tired, so he would pick up Minor Victim 2 and take her to a hotel he rented in Elk River. Minor Victim 2 stayed the night at the hotel approximately two or three times. SLEYMAN could not independently recall the name of the hotel, but described its location. Consistent with

---

[9] I am aware that other members of SLEYMAN's family have transliterated their surname as SULEIMAN. SLEYMAN and SULEIMAN appear to be different transliterations of the same Arabic surname.

Minor Victim 2's statement, SLEYMAN would check in to the hotel and Minor Victim 2 would wait in the car. Minor Victim 2 would later enter by a side door. There may have been one occasion when she came in the front. Once in the hotel room, they would hang out and watch a movie. Sometimes they would smoke marijuana together. Elk River police obtained records from an identified Elk River hotel showing that SLEYMAN stayed at the hotel on at least six separate occasions for one night each stay. These stays occurred from August 27, 2021 through June 1, 2022. Hotel records show SLEYMAN used Internet-based services to book the rooms such as Expedia, Priceline, and Agoda.

40.   With prompting, SLEYMAN acknowledged he planned on staying in a Princeton hotel with Minor Victim 2 on one occasion, but was caught by police.

41.   SLEYMAN adamantly denied having sex with Minor Victim 2. SLEYMAN stated that he was aware that having sex with a teenager was illegal. Minor Victim 2 tried to "turn on" SLEYMAN, but he stopped her. Minor Victim 2 once tried to touch SLEYMAN and reached his thighs. SLEYMAN pulled Minor Victim 2 out of the car and she lost control of herself. SLEYMAN stated she ended up in a mental hospital. SLEYMAN insisted that his interaction with Minor Victim 2 was only him "trying to be there for her" because she was vulnerable, was self-harming, was being raped by "random people met on Snapchat," and was being abused by family. SLEYMAN stated Minor Victim 2 was impregnated by her "brother-in-law," an unknown person on her father's side of the family.

42.   SLEYMAN bought nicotine, candy, snacks, a book (which she did not take), a set of four to six rings, a necklace, an animal-themed "onesie," tank tops, and a bra for

Minor Victim 2, all small things to improve her mood. Minor Victim 2 asked SLEYMAN to purchase her a "sex toy," further described as a dildo. SLEYMAN gave her the dildo in exchange for a promise that she would stop meeting with random men.

43.     SLEYMAN stated that Minor Victim 2 wanted more from the relationship, but SLEYMAN was "happy to wait" until she was sixteen so he would not get in trouble. Minor Victim 2 was thirteen when they met. SLEYMAN lied to the Elk River patrol officer about Minor Victim 2's identity because he was afraid of being caught with Minor Victim 2 and going to jail. Even though SLEYMAN stated he had done nothing illegal, he was afraid about allegations of sexual contact being made by Minor Victim 2's mother.

44.     The detective told SLEYMAN that Minor Victim 2 said she "consensually" had sex with SLEYMAN and that Minor Victim 2 did not want SLEYMAN to get in trouble. SLEYMAN asked the detective specific questions about Minor Victim 2's disclosure and suggested that Minor Victim 2 was controlled by her mother and that she had been abused by her mother's boyfriend. SLEYMAN solicited specific information about when Minor Victim 2 spoke to police.

45.     SLEYMAN denied requesting nude images of Minor Victim 2, but acknowledged that she did once send naked pictures of herself around the time they met. SLEYMAN stated he deleted them. SLEYMAN described the picture depicting her naked breasts. A few months later, she sent pictures of her vagina. Minor Victim 2 sent a lot of naked pictures. At one point, he did save the photos for a bit, but they have been deleted. Minor Victim 2 told SLEYMAN she wanted to send him naked pictures, but SLEYMAN

did not want them. SLEYMAN admitted he sent two or three pictures of his penis to Minor Victim 2. SLEYMAN stated that these photos are saved on his phone.

46.     As the interview progressed, SLEYMAN disclosed he had brought Minor Victim 2 to his apartment in Bloomington right around Minor Victim 2's birthday in 2022. SLEYMAN denied having sex or any sexual contact with Minor Victim 2.

47.     SLEYMAN admitted he had photos on his phone depicting girls approximately age 15 and up. He obtained these images from girls on Snapchat. SLEYMAN estimated he had roughly six to eight images saved. SLEYMAN was aware there was a problem with him having such photos. SLEYMAN told the interviewing detective where the photos were stored and said, "I know I'm going to be arrested for these nudes."

48.     The detective informed SLEYMAN that there would probably be a need to deal with the nudes on SLEYMAN's phone, but that he would not be arrested at the moment. The detective opened SLEYMAN's phone and allowed SLEYMAN to retrieve contact information for certain people SLEYMAN requested.

49.     After the interview concluded, Elk River police provided SLEYMAN a copy of the search warrant and receipt for the seized LG V60 ThinQ phone.[10]

---

[10] This device is consistent with account access information provided by Snapchat for several Snapchat accounts attributable to SLEYMAN.

*Follow-Up Search Warrant*

50.     Elk River police began examining SLEYMAN's phone and identified information which led to a follow-up search warrant for additional digital evidence. On September 2, 2022, Elk River police obtained the follow-up Hennepin County search warrant, this time for SLEYMAN's Bloomington, Minnesota apartment and his vehicle. In searching SLEYMAN's apartment, police found computers and digital storage media. In searching SLEYMAN's vehicle, police located handwritten notes appearing to be from Minor Victim 2 and a drawing with Minor Victim 2's first name on it. These items were located inside of the spare tire compartment in the rear of the vehicle.

<u>SLEYMAN's Actions After Police Contact</u>

51.     According to information obtained by Elk River police, on or about September 5, 2022, SLEYMAN purchased round trip airfare from Minneapolis to Abu Dhabi, United Arab Emirates (UAE) departing on September 6, 2022, and returning to Minneapolis on September 26, 2022. According to government records, SLEYMAN boarded a Delta Airlines flight from Minneapolis to Paris and connected there to a flight to Abu Dhabi, UAE.

52.     According to information provided by SLEYMAN's employer, SLEYMAN was scheduled to take a work trip to a domestic location during the week of September 5, 2022. SLEYMAN did not report to work at all and was terminated from his employment due to being away without leave for at least three days beginning on September 2, 2022.

53.     After learning of SLEYMAN's sudden departure from the United States, I served an administrative subpoena on Snap for Snapchat ID alex_wright81. In response,

Snap provided records showing the account was being accessed from IP addresses in the vicinity of Abu Dhabi, UAE.

54.     SLEYMAN did not board his scheduled September 26, 2022 flight back to the United States. According to Customs and Border Protection, SLEYMAN has not returned to the United States as of this filing.

### Elk River Police Review of SLEYMAN's Phone

55.     Elk River police reviewed the contents of SLEYMAN's LG V60 ThinQ phone pursuant to a state search warrant. In reviewing the phone, they recovered numerous screenshots of Snapchat chats, most of which are sexual in nature. SLEYMAN appears to have screen recorded chats, snaps, and video calls with chat partners, several of whom appear to be minors. Efforts to identify persons depicted are ongoing. In addition, the phone contained cached images that I recognize as more commonly traded child pornography series. These include images which appear to be still shots of videos depicting the rape of prepubescent children. SLEYMAN appears to have a sexual interest in both males and females.

56.     The phone contained dozens of cached images depicting likely minors in poses of sexually explicit nudity apparently taken and sent on Snapchat. Many of these images do not contain sufficient information to readily identify the persons depicted. While most are pubescent girls, there are also cached images depicting children likely between the ages of 9 and 12, including a set of images depicting the penis of a boy approximately 9-11 years of age.

57. The phone also contained cached images depicting Minor Victim 2 naked in the bath. Her name is visible on the screen and the display indicates the image was captured from a video call, likely on Google Meets. In addition, there are cached images of Minor Victim 2 and SLEYMAN posing together in a bathroom mirror. Minor Victim 2 is seen wearing only a black bra and underwear. SLEYMAN is seen holding Minor Victim 2 from behind with his hand around her waist. Investigators also found images apparently taken from a video depicting SLEYMAN performing oral sex on an unidentified female. Based on Minor Victim 2's statement that SLEYMAN recorded them having sex, it is possible that these images depict Minor Victim 2.

58. The phone contained a screenshot of Minor Victim 1's Snapchat profile.

*Minor Victim 3*

59. The phone contained a screen recorded video of an apparent Snapchat live video call between SLEYMAN and Minor Victim 3. The recording is a video file titled, screen-recording_20220721-080818.mp4. It is approximately 6 minutes 41 seconds in duration. The video begins with SLEYMAN reviewing chat and snaps with Minor Victim 3, then turning on the video call capability. As the video call is initiated, a portion of SLEYMAN's face is visible in the corner of the screen before the camera view is switched to the front-facing camera. In SLEYMAN's front facing camera, he is seen masturbating. In the main portion of the screen, Minor Victim 3 can be seen posing and rubbing her vagina over her clothes before she pulls her shorts to the side and displays the vagina and begins masturbating by rubbing the clitoris and inserting fingers into the vagina. The depictions on the screen are consistent with chat stored in SLEYMAN's Snapchat account

24

needcuminmymout. For example, the screen recording appears to show SLEYMAN typing, "Could u doggy and show your ass naked then love to cum while u show your tits" in the chat. That exact line appears in the chat stored in Snapchat records. This same stored Snapchat content includes an interaction between SLEYMAN and Minor Victim 3 in which Minor Victim 3 identifies herself as a 12-year-old girl from a location on the border of Mille Lacs and Sherburne Counties in Minnesota.

### Additional Minor Victims to be Identified

60.     The phone also contained a screenshot of a missing person poster regarding an identified minor reported as missing from Apple Valley as of August 5, 2022. The minor has since returned home. In their investigation into the missing 16-year-old girl, Apple Valley police obtained an emergency records disclosure from Snap, Inc. for the minor's known Snapchat ID. Snap records show the minor was in the immediate vicinity of SLEYMAN's Bloomington, Minnesota apartment building on August 6, 2022. Snapchat records obtained by Elk River police pursuant to a search warrant for Snapchat ID ibrahamsuli reflect SLEYMAN communicated with the missing minor from at least July 20, 2022 through at least August 8, 2022. Investigation into a possible connection between SLEYMAN and the minor is ongoing.

61.     In reviewing content stored on SLEYMAN's phone and in his Snapchat accounts, investigators believe there are likely several other minor victims to be identified.

### Sherburne County Criminal Charges

62.     On September 9, 2022, SLEYMAN was charged in Sherburne County in a three-count criminal complaint. The complaint charges Criminal Sexual Conduct in the

First Degree in violation of Minn. Stat. §§ 609.342.1a(e) and 609.342.2(b), Criminal

Sexual Conduct in the Second Degree in violation of Minn. Stat. §§ 603.343.1a(e) and

609.343.2(b), and Criminal Sexual Conduct in the Third Degree in violation of Minn. Stat.

§§ 609.344.1a(b) and 609.344.2(1). All of these charges relate to alleged conduct with

Minor Victim 2. A warrant for SLEYMAN's arrest issued in connection with the criminal

complaint.

<u>SLEYMAN's Snapchat Accounts</u>

63.     In response to Sherburne County and FBI administrative subpoenas, Snap,

Inc. provided subscriber and registration information and IP logs for certain Snapchat

accounts related to this investigation. These include the following:

a.  abebackup2022

    i.  Registration Account: whaihrgwuqihdgeu@gmail.com[11] (unverified)

    ii.  Display Name: Abe 123456

    iii.  Creation Date: July 30, 2022

    iv.  IP Analysis: IP logs reflect usage on IP addresses subscribed to by

         SLEYMAN or members of his family. Mobile IP assigned to T-Mobile

         addresses were observed. A subscriber for these IPs cannot be determined.

---

[11] As this email address was not verified and appears to be random letters, I believe
it is likely not a valid Google email address.

     v. User Agent[12]: The account was primarily accessed on an LG V60 ThinQ phone.

  b. addbacktucker

     i. Registration Account: samerfkfk@gmail.com (unverified)

     ii. Display Name: Tucker Loveru

     iii. Account Created: April 12, 2020

     iv. IP Analysis: No IP logs provided.

  c. addmeitsbeenamo

     i. Registration Account: yeusbdvdjsidhrbf@gmail.com (unverified), XXX-XXX-6601[13] (Verified)

     ii. Display Name: Addme Back

     iii. Account Created: April 29, 2022

     iv. IP Analysis: Between September 7, 2022 and the date of the subpoena, the account was accessed on an IP address assigned to ISP Etisalat and geolocated in the vicinity of Abu Dhabi, UAE. On September 6, 2022, prior to

---

[12] User agent data reflects the type of device used to access an account during a given IP event. The information shows what kind of device was used and is not a unique identifier. User agent data is made public by almost all Internet-connected devices. In some instances, most notably with Internet browsers, it is possible to falsify user agent information. In my training and experience, it would be extremely uncommon for a mobile app user to be able to falsify such information. The user agent information collected by Snap when an account is accessed in the Snapchat app therefore very likely reflects the kind of device truly used to access the account during a given IP log event.

[13] This number has a North Dakota area code and is assigned to Voice over Internet Protocol service Ad Hoc Labs, Inc.'s Burner App.

SLEYMAN's scheduled flight to UAE., the account was accessed on T-Mobile IPs. Earlier activity reflects access on IP addresses subscribed to by SLEYMAN at his Bloomington apartment and other IPs subscribed to by SLEYMAN's family members.

    v. User Agent: On and prior to September 1, 2022, the account was accessed on a LG V60 ThinQ phone. September 1 and 2, 2022, the account was accessed on a Oneplus A5000. On and after September 2, 2022, the account was accessed on a Samsung Galaxy A03s and a Samsung Galaxy A03 Core. The data reflects the two Samsung Galaxy devices were first associated with the account while it was being accessed in the U.S. The same two user agents were also used to access the account from UAE.

d. alex_wright81

    i. Registration Account: talon.blade1@gmail.com

    ii. Display Name: its.alexwright

    iii. Account Created: February 10, 2015

    iv. IP Analysis: Consistent with the account listed above, this account was most recently accessed on an IP address geolocated in the vicinity of Abu Dhabi, UAE. Prior to SLEYMAN's departure from the U.S., the account was accessed on IP addresses consistent with those used or subscribed to by SLEYMAN or by family members.

    v. User Agent: Prior to September 1, 2022, the account was accessed on a LG V60 ThinQ phone. In the late-night hours of September 1, 2022, the account

was accessed on a Oneplus A5000. Beginning on September 4, 2022, the account was accessed on a Samsung Galaxy A03s and a Samsung Galaxy A03 Core.

e.  alexx_wrighttt

   i.  Registration Account: samerfkfk@gmail.com (unverified), XXX-XXX-3337[14] (unverified)

   ii.  Display Name: its.alexwright

   iii.  Account Created: August 17, 2013

   iv.  IP Analysis: No IP logs were provided.

f.  asaliba19

   i.  Registration Account: samerfkfk@gmail.com

   ii.  Display Name: Abe Saliba (later changed to Saliba)

   iii.  Account Created: November 11, 2016

   iv.  IP Analysis: No IP logs were provided.

g.  fargomoorhead21

   i.  Registration Account: sleymanibrahim93@gmail.com (verified), XXX-XXX-9262

   ii.  Display Name: Fargo Moorhead

   iii.  Account Created: July 17, 2021

---

[14] This telephone number is associated with Person 1. The number was added to the account in 2015.

29

    iv. IP Analysis: the last logged IP activity was dated August 13, 2022. The account was accessed on some IP addresses common to the above-listed accounts.

    v. User Agent: The account was accessed on a LG V60 ThinQ phone.

h. ibrahimsuli

    i. Registration Account: suliemanibrahim93@gmail.com, XXX-XXX-0723[15]

    ii. Display Name: Ibrahim

    iii. Account Created: July 16, 2017

    iv. IP Analysis: Similar to addmeitsbeenamo, the account was accessed on an IP address geolocated in the UAE. after September 7, 2022. Prior to SLEYMAN's departure from the U.S., the account was accessed on IP addresses subscribed to by SLEYMAN or his family members.

    v. User Agent: Similar to ID addmeitsbeenamo, the account was accessed on a LG V60 ThinQ prior to September 3, 2022. On and after that date, the account was accessed on a Samsung Galaxy A03s and a Samsung Galaxy A03 Core.

i. needcuminmymout

    i. Registration Account: haudirhegavei@gmail.com

    ii. Display Name: Needcum Inmymouth, Openwideso Icaneatu

---

[15] In response to an administrative subpoena, T-Mobile provided subscriber information for this phone number reflecting the name of a SLEYMAN family member at an identified location in Moorhead, Minnesota. The device assigned to the number was a LG V60 ThinQ.

    iii.  Account Created: June 15, 2022

    iv.  IP Analysis: The account had several IPs in common with the above-listed accounts, including IPs subscribed to by SLEYMAN or his family members.

    v.  User Agent: The account was accessed on a LG V60 ThinQ.

64.    Investigators in this matter have obtained some of the contents of some Snapchat accounts attributable to SLEYMAN by state and federal search warrants. I have reviewed some of those records. In reviewing photos and chat logs, SLEYMAN sometimes sent pictures of victim A.W.'s face and appears to purport to be the person depicted. SLEYMAN also frequently sent photos and videos apparently depicting himself masturbating without his face showing. Nearly all of the contents of addmeitsbeenamo, alex_wright81, ibrahimsuli, and needcuminmymout appear to be focused on sexual topics or contacts with intent to introduce sexual topics. While not all of SLEYMAN's contacts are minors, many represent themselves to be minors and SLEYMAN frequently discusses age with chat partners. He sometimes purports to be a minor and sometimes represents himself as a man in his 20s.

65.    On at least two occasions, SLEYMAN sent a picture depicting his own face. This occurred from addmeitsbeenamo and ibrahimsuli. The images sent from each account were visually similar.

## SLEYMAN's Google Accounts

66.     In response to subpoenas, Google LLC provided records for Google accounts associated with this investigation. These include:

a.  samerfkfk@gmail.com

   i.  Display Name: Ibrahim sulieman

   ii.  Account Created: November 11, 2012

b.  talon.blade1@gmail.com

   i.  Display Name: Talon Blade

   ii.  Account Created: December 23, 2012

   iii.  Country: United Arab Emirates

## CONCLUSION

67.     This investigation remains ongoing, as are victim identification efforts.

68.     Based on the foregoing, I submit there is probable cause as charged in the proposed criminal complaint that IBRAHIM GHASSAN SLEYMAN, in the District of Minnesota and elsewhere, has violated 18 U.S.C. §§ 2251(a) and (e), 18 U.S.C.

§§ 2252(a)(2) and (b)(1), 18 U.S.C. § 2422(b), 18 U.S.C. § 1470, and 18 U.S.C.

§ 1028(a)(7).

69. Accordingly, I request that a warrant issue for the arrest of IBRAHIM

GHASSAN SLEYMAN, that he may be brought before this Court.

Special Agent Matthew Vogel
United States Department of Justice
Federal Bureau of Investigation

SUBSCRIBED and SWORN before me
by reliable electronic means (Zoom and
email) pursuant to Fed. R. Crim. P. 41(d)(3)
on October 28, 2022

THE HONORABLE TONY N. LEUNG
UNITED STATES MAGISTRATE JUDGE

A true printed copy in ___33___ sheet(s)
of the electronic record filed on _10-28-22_,
in the United States District Court
for the District of Minnesota.
CERTIFIED, _December 13th_, 20_22_
Kate M. Fogarty, Clerk
BY: _____
Deputy Clerk

33

# EXHIBIT 2

HAT:nab
AO 442 (Rev. 11/11) Arrest Warrant

2022R00490

# UNITED STATES DISTRICT COURT

for the
District of Minnesota

UNITED STATES OF AMERICA

v.

IBRAHIM GHASSAN SLEYMAN

**FILED UNDER SEAL PURSUANT
TO 18 U.S.C. § 3509(d)(2) AND
LOCAL RULE 49.1(c)(1)(G)**

Case No. 22-MJ-890 (TNL)

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
IBRAHIM GHASSAN SLEYMAN

who is accused of an offense or violation based on the following document filed with the court:

\_\_\_ Indictment  \_\_\_ Superseding Indictment  \_\_\_ Information  \_\_\_ Superseding Information  X  Complaint

\_\_\_ Probation Violation Petition  \_\_\_Supervised Release Violation Petition  \_\_\_ Violation Notice \_\_\_ Order of the Court

### COUNT 1 – Production of Child Pornography

From at least on or about October 28, 2020, and continuing through on or about October 29, 2020, in the District of Minnesota and elsewhere, IBRAHIM GHASSAN SLEYMAN attempted to and did employ, use, persuade, induce, entice, and coerce Minor Victim 1, who was then approximately 9 years old, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported using any means and facility of interstate and foreign commerce, transported in and affecting interstate and foreign commerce, and was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, all in violation of 18 U.S.C. §§ 2251(a) and (e).

### COUNT 2 – Receipt of Child Pornography

On or about July 21, 2022, in the District of Minnesota and elsewhere, IBRAHIM GHASSAN SLEYMAN attempted to and did knowingly receive a visual depiction, to wit, a live video call in which Minor Victim 3 was depicted masturbating. The visual depictions of the live video call were received using a means or facility of interstate commerce by any means including by computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, and such visual depiction is of such conduct, all in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1).

### COUNT 3 – Child Enticement Using a Facility of Interstate Commerce

From on or about July, 2021 through on or about July 13, 2022, in the District of Minnesota and elsewhere, IBRAHIM GHASSAN SLEYMAN, did use the mail or any facility or means of interstate or foreign commerce to knowingly persuade, induce, entice, and coerce Minor Victim 2 to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, to wit, Criminal Sexual Conduct in the first, second, and third degrees, in violation of Minnesota laws, and attempted to do so, all in violation of 18 U.S.C. § 2422(b).

AO 442 (Rev. 11/11) Arrest Warrant (Page 2)                                                    2022R00490

COUNT 4 – Transfer of Obscene Material to a Minor

On or about April 19, 2021, using the mail or any facility or means of interstate or foreign commerce, knowingly transferred obscene matter to another individual who had not attained the age of 16 years, knowing that such other individual had not attained the age of 16 years, and attempted do so. The obscene matter is a video file identified as b~EiQSFURjMTU4d2J5VVVlYVFiRHBvTHpKQRoAGgAyAQNIAlAEYAE~v4.mp4. The file is a video approximately 22 seconds in duration. It depicts an adult male masturbating to ejaculation, all in violation of 18 U.S.C. § 1470; and

COUNT 5 – Identity Theft

From at least on or about October 28, 2020, and continuing through at least on or about September 13, 2022, in the District of Minnesota and elsewhere, IBRAHIM GHASSAN SLEYMAN knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, to wit victim A.W., with the intent to commit, and to aid or abet, and in connection with unlawful activity that constituted a violation of federal law, to wit the offense alleged in Count 1, all in violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D).

Date: __October 28, 2022__                                 _Tony N. Leung_
                                                         Issuing officer's signature

City and State: __Minneapolis, MN__        The Honorable Tony N. Leung
                                           United States Magistrate Judge
                                                    Printed Name and Title

---

**Return**

This warrant was received on (date) _____, and the person was arrested on (date) _____
at (city and state) _____.

Date: _____                      _____
                                           Arresting officer's signature

                                           _____
                                           Printed name and title

---

A true printed copy in ____2____ sheet(s)
of the electronic record filed on _10-28-22_
in the United States District Court
for the District of Minnesota.
CERTIFIED, _December 13th_, 20_22_
Kate M. Fogarty, Clerk
BY: _____
        Deputy Clerk

# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CR 22-347 DWF/ECW

| UNITED STATES OF AMERICA, | **INDICTMENT** |
|---|---|
| Plaintiff, | 18 U.S.C. § 1028(a)(7) |
|  | 18 U.S.C. § 1028(b)(2)(B) |
| v. | 18 U.S.C. § 1470 |
|  | 18 U.S.C. § 2251(a) |
| IBRAHIM GHASSAN SLEYMAN, | 18 U.S.C. § 2251(e) |
| a/k/a "Abe Sleyman," | 18 U.S.C. § 2252(a)(2) |
| a/k/a "Ibrahim Suleiman," | 18 U.S.C. § 2252(b)(1) |
|  | 18 U.S.C. § 2422(b) |
| Defendant. | 18 U.S.C. § 2427 |

THE UNITED STATES GRAND JURY CHARGES THAT:

## **INTRODUCTION**

1.      At all times relevant to the Indictment, Defendant IBRAHIM GHASSAN
SLEYMAN resided in the State and District of Minnesota.

    a.      From in and around October 2020, through in and around September
2022, SLEYMAN created and controlled internet accounts for email, social media, and
chatting, among other services, and engaged minor victims in conversation using a variety
of aliases, usernames, and accounts. Defendant SLEYMAN attempted to and did persuade,
induce, entice, and coerce minor victims in Minnesota and elsewhere to create sexually
explicit images and videos of themselves and their exposed genitals to send to him via
social media and text messenger applications.

    b.      Further, from August 2021 through July 13, 2022, SLEYMAN
attempted to and did groom and entice a minor victim to produce child pornography and



*United States v. Ibrahim Ghassan Sleyman*

engage in sexual activity with SLEYMAN, including by providing the minor victim with marijuana, psilocybin mushrooms, and gifts.

    c.    Minor Victim 1 was a 9-year-old boy who lived in Missouri.

    d.    Minor Victim 2 was a 14-year-old girl who lived in Minnesota.

    e.    Minor Victim 3 was a 12-year-old girl who lived in Minnesota.

    f.    Minor Victim 4 was a 10-year-old girl.

## COUNT 1
### (Attempted Production and Production of Child Pornography)

2.    From at least on or about October 28, 2020, through on or about October 29, 2020, in the State and District of Minnesota and elsewhere, the defendant,

### IBRAHIM GHASSAN SLEYMAN,

attempted to and did employ, use, persuade, induce, entice, and coerce Minor Victim 1, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported using any means and facility of interstate and foreign commerce, transported in and affecting interstate and foreign commerce, and was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, all in violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

## COUNT 2
### (Receipt of Child Pornography)

3.    On or about July 21, 2022, in the State and District of Minnesota and elsewhere, the defendant,

2

*United States v. Ibrahim Ghassan Sleyman*

## IBRAHIM GHASSAN SLEYMAN,

did knowingly receive visual depictions using any means and facility of interstate and foreign commerce or that had been mailed, shipped, and transported in or affecting interstate and foreign commerce, including by computer, where the production of such depictions involved the use of a minor engaging in sexually explicit conduct, and such visual depictions are of such conduct, including, but not limited to, a live video call in which Minor Victim 3 was depicted masturbating and recorded in a video entitled "screen-recording_20220721-080818.mp4," all in violation of Title 18, United States Code, Sections 2252(a)(2) and 2252(b)(1).

### COUNT 3
### (Enticement of a Minor)

4. From in or about August 2021, through on or about July 13, 2022, in the State and District of Minnesota and elsewhere, the defendant,

## IBRAHIM GHASSAN SLEYMAN,

using a facility and means of interstate and foreign commerce, namely, the internet, did knowingly attempt to and did persuade, induce, entice, and coerce Minor Victim 2, who had not attained the age of 18 years, to engage in sexual activity which under such circumstances would constitute a criminal offense, namely, the production of child pornography in violation of Title 18, United States Code, Section 2251(a), and criminal sexual conduct in the first, second, and third degrees, in violation of Minnesota Statute Sections 609.342.1a(e), 609.342.2(b), 609.343.1a(e), 609.343.2(b), 609.344.1a(b), and 609.344.2(1), all in violation of Title 18, United States Code, Sections 2422(b) and 2427.

*United States v. Ibrahim Ghassan Sleyman*

## COUNT 4
### (Attempted Transfer and Transfer of Obscene Material to a Minor)

5.      On or about April 19, 2021, in the State and District of Minnesota and elsewhere, the defendant,

**IBRAHIM GHASSAN SLEYMAN,**

using any facility or means of interstate or foreign commerce, attempted to and did knowingly transfer obscene matter to an individual purported to be Minor Victim 4, who had not attained the age of 16 years, knowing that Minor Victim 4 had not attained the age of 16 years. Specifically, SLEYMAN sent obscene matter that is a computer file identified as      b~EiQSFURjMTU4d2J5VVVIYVFiRHBvTHpKQRoAGgAyAQNIAlAEYAE~v4 .mp4, a video approximately 22 seconds in duration depicting an adult male masturbating to ejaculation, all in violation of Title 18, United States Code, Section 1470.

## COUNT 5
### (Identity Theft)

6.      From at least on or about October 28, 2020, through on or about September 13, 2022, in the State and District of Minnesota and elsewhere, the defendant,

**IBRAHIM GHASSAN SLEYMAN,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, namely, the name and likeness of victim A.W., in relation to the offenses charged in Counts 1 and 4, with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of federal law, namely, the offenses charged in Counts 1 and 4, all in violation of Title 18, United States Code, Sections 1028(a)(7) and 1028(b)(2)(B).

4

*United States v. Ibrahim Ghassan Sleyman*

## FORFEITURE ALLEGATIONS

As a result of the offenses alleged in Counts 1 and 2 of this Indictment, Defendant **IBRAHIM GHASSAN SLEYMAN** shall forfeit to the United States pursuant to Title 18, United States Code, Section 2253(a):

(1)     any visual depiction described in section 2251, 2251A, 2252, 2252A, 2252B, or 2260 of Chapter 110 of Title 18, United States Code, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of Chapter 110 of Title 18, United States Code;

(2)     any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offenses; and

(3)     any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

As a result of the offense alleged in Count 3 of this Indictment, Defendant **IBRAHIM GHASSAN SLEYMAN** shall forfeit to the United States pursuant to Title 18, United States Code, Section 2428(a), (1) any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such violation; and (2) any property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of such violation.

As a result of the offense alleged in Count 4 of this Indictment, Defendant **IBRAHIM GHASSAN SLEYMAN** shall forfeit to the United States pursuant to Title 18, United States Code, Section 1467:

*United States v. Ibrahim Ghassan Sleyman*

    (1)    any obscene material produced, transported, mailed, shipped, or received in violation of this chapter;

    (2)    any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and

    (3)    any property, real or personal, used or intended to be used to commit or to promote the commission of such offense.

As a result of the offense alleged in Count 5 of this Indictment, Defendant **IBRAHIM GHASSAN SLEYMAN** shall forfeit to the United States pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and 1028(b), any property constituting, or derived from, proceeds SLEYMAN obtained directly or indirectly, as the result of such violation, and any personal property used or intended to be used to commit the offense.

The Property subject to forfeiture includes, but is not limited to, the following:

    (a) a set of eight USB drives;

    (b) a Dell Latitude 5590 laptop with 256 GB hard drive, serial number 7TTMSQ2;

    (c) a desktop computer with two internal hard drives, identified as B8FC-51FF-7EA0-A231;

    (d) an HP Prosmart Laptop, serial number CND2350VS6;

    (e) an LG LM-V600TM ThinQ, IMEI 355657110357132;

    (f) a set of two USB drives and one external hard drive;

    (g) a set of three USB drives and two hard drives;

    (h) a Samsung SM-A037F phone; and

    (i) a 2020 Toyota Rav-4, Minnesota license EJK351, VIN JTMP1RFV9LJ036898.

*United States v. Ibrahim Ghassan Sleyman*

If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 1028(g), and 2253(b).

A TRUE BILL

_____        _____
UNITED STATES ATTORNEY                  FOREPERSON

A true printed copy in _____7_____ sheet(s)
of the electronic record filed on _12-7-22_,
in the United States District Court
for the District of Minnesota.
CERTIFIED, _December 9th_, 20_22_
Kate M. Fogarty, Clerk
BY: _____
                    Deputy Clerk

Cn 22.347 DWFIECW

*United States v. Ibrahim Ghassan Sleyman*

If any of the above-described forfeitable property is unavailable for forfeiture, the

United States intends to seek the forfeiture of substitute property as provided for in Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code,

Sections 1028(g), and 2253(b).

A TRUE BILL

FOR _____
UNITED STATES ATTORNEY

**SIGNATURE REDACTED**

A true printed copy in _____ sheet(s)
of the electronic record filed on 12-7-22,
in the United States District Court
for the District of Minnesota.
CERTIFIED, December 9th, 2022
Kate M. Fogarty, Clerk
BY: _____
Deputy Clerk

SCANNED
DEC 07 2022
U.S. DISTRICT COURT MPLS

7

# EXHIBIT 4

**Exhibit 4** contains the applicable portions of the United States statutes and relevant legal provisions describing the offenses with which IBRAHIM GHASSAN SLEYMAN (SLEYMAN) is charged, the statute of limitations, and the penalties SLEYMAN faces if convicted. Asterisks (***) and ellipses (…) are used to indicate portions of the statutes or case law which are omitted because these portions do not apply to the case against SLEYMAN.

**Title 18, United States Code, Section 2251**
**Sexual exploitation of children**

(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

\* \* \*

(e) Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years ....

**Title 18, United States Code, Section 2252**
**Certain activities relating to material involving the sexual exploitation of minors**

(a) Any person who—

   ...

   (2) knowingly receives … any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, … if—

       (A)    the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

       (B)    such visual depiction is of such conduct;

   ...

   shall be punished as provided in subsection (b) of this section.

(b) (1) Whoever violates, or attempts or conspires to violate, paragraph … (2) … of subsection (a) shall be fined under this title and imprisoned not less than 5 years and not more than 20 years ….

\* \* \*

4

## Title 18, United States Code, Section 2256
## Definitions for chapter

For the purposes of this chapter, the term—

   (1) "minor" means any person under the age of eighteen years;

   (2) (A) Except as provided in subparagraph (B), "sexually explicit conduct" means actual or simulated—
       (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
       (ii) bestiality;
       (iii) masturbation;
       (iv) sadistic or masochistic abuse; or
       (v) lascivious exhibition of the anus, genitals, or pubic area of any person;
     (B) For purposes of subsection 8(B) of this section, "sexually explicit conduct" means—
       (i) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited;
       (ii) graphic or lascivious simulated
          (I) bestiality;
          (II) masturbation; or
          (III) sadistic or masochistic abuse; or
       (iii) graphic or simulated lascivious exhibition of the anus, genitals, or pubic area of any person;

   (3) "producing" means producing, directing, manufacturing, issuing, publishing, or advertising;

   (4) "organization" means a person other than an individual;

   (5) "visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format;

   (6) "computer" has the meaning given that term in section 1030 of this title;

   (7) "custody or control" includes temporary supervision over or responsibility for a minor whether legally or illegally obtained;

   (8) "child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—

(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

(9) "identifiable minor"—

  (A) means a person—

    (i)    (I) who was a minor at the time the visual depiction was created, adapted, or modified; or

           (II) whose image as a minor was used in creating, adapting, or modifying the visual depiction; and

    (ii)  who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature; and

  (B) shall not be construed to require proof of the actual identity of the identifiable minor.

(10) "graphic", when used with respect to a depiction of sexually explicit conduct, means that a viewer can observe any part of the genitals or pubic area of any depicted person or animal during any part of the time that the sexually explicit conduct is being depicted; and

(11) the term "indistinguishable" used with respect to a depiction, means virtually indistinguishable, in that the depiction is such that an ordinary person viewing the depiction would conclude that the depiction is of an actual minor engaged in sexually explicit conduct. This definition does not apply to depictions that are drawings, cartoons, sculptures, or paintings depicting minors or adults.

**Title 18, United States Code, Section 2422**
**Coercion and enticement**

\* \* \*

(b) Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

## Title 18, United States Code, Section 2427
**Inclusion of offenses relating to child pornography in definition of sexual activity for which any person can be charged with a criminal offense**

In this chapter, the term "sexual activity for which any person can be charged with a criminal offense" includes the production of child pornography, as defined in section 2256(8).

### Title 18, United States Code, Section 1470
**Transfer of obscene material to minors**

Whoever, using the mail or any facility or means of interstate or foreign commerce, knowingly transfers obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, or attempts to do so, shall be fined under this title, imprisoned not more than 10 years, or both.

9

**Title 18, United States Code, Section 1028**
**Fraud and related activity in connection with identification documents, authentication features, and information**

(a) Whoever, in a circumstance described in subsection (c) of this section—

    …

    (7) knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law;

    …

shall be punished as provided in subsection (b) of this section.

(b) The punishment for an offense under subsection (a) of this section is—

    …

    (2) … a fine under this title or imprisonment for not more than 5 years, or both, if the offense is—

        …

        (B)    an offense under paragraph (3) or (7) of such subsection;

    …

    (5) in the case of any offense under subsection (a), forfeiture to the United States of any personal property used or intended to be used to commit the offense; and

    (6) a fine under this title or imprisonment for not more than one year, or both, in any other case.

(c) The circumstance referred to in subsection (a) of this section is that—

    …

    (3) either—

        (A)    the production, transfer, possession, or use prohibited by this section is in or affects interstate or foreign commerce, including the transfer of a document by electronic means; or

        (B)    the means of identification, identification document, [or] false identification document … is transported in the mail in the course of the production, transfer, possession, or use prohibited by this section.

(d) In this section … —

    …

    (3) the term "identification document" means a document made or issued by or under the authority of the United States Government, a State, political subdivision of a State, a sponsoring entity of an event designated as a special event of national significance, a foreign government, political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals;

    …

(7) the term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—

   (A)   name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;

   (B)   unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

   (C)   unique electronic identification number, address, or routing code; or

   (D)   telecommunication identifying information or access device ... ;

   ...

(10)   the term "transfer" includes selecting an identification document, false identification document, or document-making implement and placing or directing the placement of such identification document, false identification document, or document-making implement on an online location where it is available to others;

(11)   the term "State" includes any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any other commonwealth, possession, or territory of the United States; ...

*   *   *

(f) ATTEMPT AND CONSPIRACY.—Any person who attempts or conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

(g) FORFEITURE PROCEDURES.—The forfeiture of property under this section, including any seizure and disposition of the property and any related judicial or administrative proceeding, shall be governed by the provisions of section 413 (other than subsection (d) of that section) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 853).

*   *   *

(i) RULE OF CONSTRUCTION.—For purpose of subsection (a)(7), a single identification document or false identification document that contains 1 or more means of identification shall be construed to be 1 means of identification.

## Title 18, United States Code, Section 3282
**Offenses not capital**

(a) **In general.** Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

\* \* \*

### Title 18, United States Code, Section 3299
### Child abduction and sex offenses

    Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 [kidnapping] involving a minor victim, and for any felony under chapter 109A [sexual abuse], 110 [sexual exploitation and other abuse of children] ... , or 117 [transportation for illegal sexual activity], or section 1591 [sex trafficking of children].

**Title 18, United States Code, Section 2253**
**Criminal Forfeiture**

(a) **Property Subject to Criminal Forfeiture.**—A person who is convicted of an offense under this chapter involving a visual depiction described in section 2251, ... [or] 2252, ... of this chapter or who is convicted of an offense under section 2252B of this chapter, or who is convicted of an offense under chapter 109A, shall forfeit to the United States such person's interest in—

    (1) any visual depiction described in section 2251, ... [or] 2252, ... or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of this chapter;

    (2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and

    (3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

\* \* \*

14

**Title 18, United States Code, Section 2428**
**Forfeitures**

(a) **In General.**—The court, in imposing sentence on any person convicted of a violation of this chapter, shall order, in addition to any other sentence imposed and irrespective of any provision of State law, that such person shall forfeit to the United States—

    (1) such person's interest in any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such violation; and

    (2) any property, real or personal, constituting or derived from any proceeds that such person obtained, directly or indirectly, as a result of such violation.

(b) **Property Subject to Forfeiture.**—

    (1) In general.—The following shall be subject to forfeiture to the United States and no property right shall exist in them:

        (A) Any property, real or personal, used or intended to be used to commit or to facilitate the commission of any violation of this chapter.

        (B) Any property, real or personal, that constitutes or is derived from proceeds traceable to any violation of this chapter.

\* \* \*

15

**Title 18, United States Code, Section 1467**
**Criminal Forfeiture**

(a) **Property Subject to Criminal Forfeiture.**—A person who is convicted of an offense involving obscene material under this chapter shall forfeit to the United States such person's interest in—

    (1) any obscene material produced, transported, mailed, shipped, or received in violation of this chapter;

    (2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and

    (3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense.

(b) The provisions of section 413 of the Controlled Substances Act (21 U.S.C. 853), with the exception of subsections (a) and (d), shall apply to the criminal forfeiture of property pursuant to subsection (a).

\* \* \*

16

## Title 18, United States Code, Section 982
### Criminal Forfeiture

(a) ...

    (2) The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate—

    ...

    (B) section ... 1028 ... of this title,

shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

\*   \*   \*

(b) (1) The forfeiture of property under this section, including any seizure and disposition of the property and any related judicial or administrative proceeding, shall be governed by the provisions of section 413 (other than subsection (d) of that section) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 853).

\*   \*   \*

## Title 21, United States Code, Section 853
### Criminal Forfeitures

(a) **Property subject to criminal forfeiture.** Any person convicted of a violation of this subchapter or subchapter II punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

    (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

    (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

    (3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

(b) **Meaning of term "property."** Property subject to criminal forfeiture under this section includes—

    (1) real property, including things growing on, affixed to, and found in land; and

    (2) tangible and intangible personal property, including rights, privileges, interests, claims, and securities.

(c) **Third party transfers.** All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

\* \* \*

(f) **Warrant of seizure.** The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

(g) **Execution.** Upon entry of an order of forfeiture under this section, the court shall authorize the Attorney General to seize all property ordered forfeited upon such terms and conditions as the court shall deem proper. Following entry of an order declaring the property forfeited, the court may, upon application of the United States, enter such appropriate restraining orders or injunctions, require the execution of satisfactory performance bonds, appoint receivers, conservators, appraisers, accountants, or trustees, or take any other action to protect the interest of the United States in the property ordered forfeited. Any income accruing to or derived from property ordered forfeited under this section may be used to offset ordinary and necessary expenses to the property which are required by law, or which are necessary to protect the interests of the United States or third parties.

(h) **Disposition of property.** Following the seizure of property ordered forfeited under this section, the Attorney General shall direct the disposition of the property by sale or any other commercially feasible means, making due provision for the rights of any innocent persons. Any property right or interest not exercisable by, or transferable for value to, the United States shall expire and shall not revert to the defendant, nor shall the defendant or any person acting in concert with him or on his behalf be eligible to purchase forfeited property at any sale held by the United States. Upon application of a person, other than the defendant or a person acting in concert with him or on his behalf, the court may restrain or stay the sale or disposition of the property pending the conclusion of any appeal of the criminal case giving rise to the forfeiture, if the applicant demonstrates that proceeding with the sale or disposition of the property will result in irreparable injury, harm, or loss to him.

\* \* \*

(p) **Forfeiture of substitute property.**
  (1) In general. Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or omission of the defendant—
    (A) cannot be located upon the exercise of due diligence;
    (B) has been transferred or sold to, or deposited with, a third party;
    (C) has been placed beyond the jurisdiction of the court;
    (D) has been substantially diminished in value; or
    (E) has been commingled with other property which cannot be divided without difficulty.
  (2) Substitute property. In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.
  (3) Return of property to jurisdiction. In the case of property described in paragraph (1)(C), the court may, in addition to any other action authorized by this subsection, order the defendant to return the property to the jurisdiction of the court so that the property may be seized and forfeited.

19

# EXHIBIT 5



Sleyman, Ibrahim Ghassan – Minnesota Driver's License Photograph



Sleyman, Ibrahim Ghassan – Image from U.S. Law Enforcement Body-Worn Camera during
September 2, 2022 Search Warrant Execution